Filed 1/8/20; Certified for Publication 2/6/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re D.P., a Person Coming Under the Juvenile Court Law. | B295780 |
| _____ | Los Angeles County |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Super. Ct. No. 18CCJP07818B |
| Plaintiff and Respondent, | |
| v. | |
| J.P., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Brett Bianco, Judge. Reversed in part, affirmed in part.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and Kim Nemoy, Principal Deputy County Counsel, for Plaintiff and Respondent.

After a combined jurisdiction and disposition hearing, the juvenile court removed seven-year-old D.P. from his mother's physical custody and returned him home to father's custody, recognizing father had a restraining order requiring mother to stay away from the home. Mother appeals the removal order. She argues the juvenile court failed to state the facts supporting removal, as mandated under Welfare and Institutions Code section 361, subdivision (e), and the court failed to consider reasonable alternatives to removal, as mandated under section 361, subdivision (c).[1] We agree the juvenile court failed to state the facts supporting removal, and conclude there is a reasonable probability that the court would have adopted the alternative to removal specified in section 361, subdivision (c)(1)(A) had it considered the option.[2]

Mother also challenges the parts of the disposition order restricting her to monitored visitation and requiring her to participate in a full drug and alcohol treatment program, a 12-step program, and a 26-week domestic violence program. We conclude the court reasonably exercised its discretion to impose visitation restrictions and services. Accordingly,

---

[1] Statutory references are to the Welfare and Institutions Code.

[2] Section 361, subdivision (c)(1)(A) requires the juvenile court to determine whether it would be safe to return the dependent child home after "removing an offending parent . . . from the home."

2

we reverse the removal portion of the disposition order, and affirm the order in all other respects.[3]

## FACTS AND PROCEDURAL BACKGROUND

The family consists of mother, father, and D.P. (born July 2011). Mother has another son, A.H. (born November 2001), by a different father. This appeal concerns D.P. only.

The family came to the attention of the Los Angeles County Department of Children and Family Services (the Department) after it received a referral alleging mother had driven with D.P. while under the influence of alcohol. The referral also reported mother suffered from bipolar disorder and had been experiencing manic episodes due to the illness. The episodes usually coincided with mother failing to take prescribed psychotropic medication.

On November 8, 2018, a social worker met with the parents and D.P. at the family home. Mother immediately confronted the social worker, angrily asking, " 'What the fuck do you want?' " When the social worker asked mother to calm down and back away, mother replied, " 'Then you can get the fuck out of here!' " She then put her hand in the social worker's face and walked away.

Father apologized for mother's outburst, confiding that he was "deathly afraid" of mother and what she might do to punish

---

[3] At our request for an update on the status of the dependency case, the parties notified this court that the child welfare agency has recommended termination of dependency jurisdiction over D.P. with a family law exit order awarding the parents joint legal and joint physical custody. Nothing in this opinion should delay termination of dependency jurisdiction should the juvenile court determine it is appropriate based on developments that have occurred since mother filed this appeal.

him. He said they had been separated for a year, but continued to live together for financial reasons. They currently lived in an upstairs apartment on the paternal grandparents' property.

Father reported that, in May 2018, mother had a " '[b]ipolar episode' " and " 'trashed' " the apartment. He showed the social worker photographs of the incident with several broken dishes scattered all over the floor. The paternal grandfather said he had been allowing the family to live in the apartment rent free, but mother had "destroyed the property." He claimed that when mother got upset, she would hit the walls and floors with a hammer. He said the outbursts had caused $40,000 worth of damage, and he now felt compelled to evict the family. However, he said mother's conduct was his only concern, and he would permit father to stay with the children if she moved out.

Mother refused to allow the paternal grandparents to see D.P. She claimed they had been " 'harassing' " her and had served her with a " 'fake eviction notice.' "

Father said mother was " 'usually calm' " unless she was " 'off her meds' " or " 'mixing it with liquor.' " The children were usually present during mother's outbursts. Father said mother drank daily, and identified her drink of choice as "The Club Long Island Iced Tea." He regularly found empty cans of the drink in mother's car or next to mother when she was "passed out" on the couch. He said D.P. referred to the drink as mother's " 'bad juice,' " and D.P. had reported seeing mother drink it on occasion. The paternal grandfather similarly reported that D.P. had said things to suggest mother "drinks a lot of alcohol."

On November 4, 2018 (four days before the social worker came to the home), mother verbally assaulted the paternal grandmother and threatened father with a knife. Father was

4

holding D.P. at the time. While he was on the phone with the police, mother screamed " 'stop hitting me,' " in an apparent effort to paint father as the aggressor in the incident. Before the police arrived, the situation had deescalated and father told the police he did not want to press charges.

The social worker interviewed D.P. The child confirmed mother had threatened father with a knife while father held him. D.P. said " 'my mom almost killed him because she was mad.' " (Boldface omitted.) He added, " 'My mom is always mad and yelling at my dad.' " (Boldface omitted.) Apart from the incident with the knife, D.P. said " 'she just throws dishes.' " (Boldface omitted.)

Mother returned to speak with the social worker and immediately began to cry. She claimed father beat her and made her perform sex acts for money. She said she wanted a divorce, but father refused and begged her to stay. She blamed her " 'depression' " on her marriage and repeatedly referred to father as a " 'useless piece of shit' " because he had not provided for the family. She said father was " 'lazy' " and "controlling," especially around D.P. Mother said she had been seeing a " 'behavior specialist' " and taking medication because of the " 'mental health problems' " that father had caused her.

Mother denied alcohol abuse. She claimed she drank only about once a month, and she never drove under the influence. She reported using marijuana " 'daily,' " but said she smoked outside the home and never around her children.

While attempting to interview A.H., mother's older son, the social worker observed mother confront a woman leaving a downstairs apartment. The argument became heated and others

5

had to intervene to pull the women apart. A.H. yelled for mother to " 'stop' " and eventually the other woman drove away.

The social worker confronted mother about the argument, expressing concern that mother could not control her behavior even with the social worker present. Mother responded that the woman was a paternal aunt, and she had no problem " 'jump[ing]' " the aunt in front of the social worker. Mother said she had controlled her anger appropriately and she confronted the aunt only because the aunt "threatened her first."

Mother said the children would be better off in foster care than with father and repeatedly made comments about father's failure to provide financially for the family. She said father was lying to the social worker because he did not want to let mother go.

The parents signed a safety plan, agreeing a maternal aunt would stay in the home with the family for the next week. Father was uneasy about the plan, but believed D.P. would be safe with mother as long as the maternal aunt was present.

A week later, father obtained a temporary restraining order against mother based on the November 4, 2018 incident. The restraining order awarded father temporary custody of D.P. and ordered mother to vacate and stay away from the family home. However, mother refused to leave, so father took D.P. to live with the paternal grandparents.

Mother met again with the social worker and apologized for her behavior. She said her relationship with father was toxic and they triggered each other. She also insisted father was the abuser in the relationship, not her. She had attempted to obtain her own restraining order against father, but it was denied. She showed the social worker pictures of injuries to her face and arms

that she claimed father inflicted on her during an altercation four months earlier. She said they had a history of violence and father had been arrested for assaulting her in the past.[4] She was not concerned about father's treatment of D.P., except she said he was "over protective" of the child. She also claimed father had " 'brainwashed' " D.P. to think badly of her "because she drinks alcohol."

On November 11, 2018, mother visited her health care provider complaining of depression after receiving father's restraining order. Her doctor diagnosed her with adjustment disorder with mixed anxiety and depressed mood. Mother's medical records showed prior diagnoses for bipolar disorder, moderate cannabis use disorder, and moderate alcohol use disorder, dating from 2015 and persisting to the present. She had been prescribed an antidepressant, but said she only took it "when she was feeling upset."

On November 30, 2018, the family court issued a two-year restraining order protecting father and D.P. from mother, and granting father sole custody. The restraining order restricted mother to monitored visitation with D.P. Three days later, the family court issued a temporary restraining order protecting mother, A.H., and D.P. from father. Mother acknowledged she had sought the restraining order because father had obtained one against her. To comply with the mutual restraining orders,

---

[4]     Mother presented police and hospital records from June 2013 regarding a domestic violence incident listing mother as the victim. According to the report, father had punched mother in the face and torso because he was upset about losing his job. Father denied the incident and was acquitted of a resulting domestic violence charge.

the Department detained D.P. with the paternal grandparents. On December 10, 2018, the family court modified the temporary restraining against father to remove D.P. as a protected person and to eliminate a move-out order against father. The family court emphasized that, had mother advised the court of father's restraining order, as she should have, the court would not have issued the temporary restraining order on the terms that it did.

On December 10, 2018, the Department filed a non-detention dependency petition. The petition alleged both parents had a history of domestic violence that placed A.H. and D.P. at risk (§ 300, subds. (a), (b)); mother had mental and emotional disorders that posed a serious risk of harm to the children (§ 300, subd. (b)); and mother had a history of alcohol and marijuana abuse that posed a risk of harm and made her incapable of caring for the children (§ 300, subd. (b)). The Department recommended D.P. remain released to father and detained from mother. It recommended A.H. remain released to mother. The juvenile court found a prima facie case for jurisdiction and adopted the Department's recommendations regarding detention.

Mother enrolled in a weekly parenting class and anger management classes, and she participated in individual therapy. She tested negative for alcohol and positive for marijuana at each on-demand test. The Department reported mother's visits with D.P. were appropriate.

On February 5, 2019, the court held a combined jurisdiction and disposition hearing. The children's counsel joined with the Department in arguing all counts of the petition should be sustained as to D.P. However, in view of his age, the children's counsel argued A.H. should be dismissed from the petition.

Counsel also indicated A.H. was not in need of treatment or services.

The juvenile court sustained the petition as to both children under section 300, subdivisions (a) and (b). However, with respect to disposition, the court found the children were not similarly situated, given the age difference and evidence showing A.H. did not need services to be safe in mother's custody. Thus, the court terminated A.H.'s case with a family law order granting mother and A.H.'s father joint legal custody, with primary physical custody to mother.

With respect to D.P., the court stated it would remove the child from mother's custody "pursuant to Dependency Court Order 415, the terms of which are contained in the minute order" and "release[ ] [him to] home of father." The court ordered mother to participate in drug and alcohol treatment, a 12-step program, mental health services, including psychotropic medication compliance, a 26-week domestic violence program, and individual counseling. Father was likewise ordered to participate in individual counseling and parent education. The court denied mother's request for a permanent restraining order, ordered her visits with D.P. to be monitored, and specified that father was not to attend mother's visits.

## DISCUSSION

1. ***The Juvenile Court Failed to State the Facts on which the Decision to Remove D.P. Was Based***

"At the dispositional hearing, a dependent child may not be taken from the physical custody of the parent under section 361 unless the court finds there is clear and convincing evidence there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being

9

if returned home, and that there are no reasonable means to protect the child's physical health without removing the child." (*In re D.B.* (2018) 26 Cal.App.5th 320, 328; see § 361, subd. (c)(1).) The juvenile court must determine "whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home" and "shall state the facts on which the decision to remove the minor is based."  (§ 361, subd. (e).)

At the disposition hearing, the juvenile court purported to remove D.P. from mother's custody "pursuant to Dependency Court Order 415, [upon] the terms . . . contained in the minute order."  The relevant portion of the minute order states:

### "DEPENDENCY COURT ORDER 415

"The Court has read, considered, and admitted into evidence the Exhibits identified in the minute order, the sustained petition, and the testimony and arguments, if applicable, and makes the following findings and orders:

"The child is hereby declared dependent of the Court under Welfare and Institutions Code section 300.

"The Court finds by clear and convincing evidence, pursuant to Welfare and Institutions Code sections 361(a)(1), 361(c), 361(d) and 362(a), and additionally applying to noncustodial parent(s)/legal guardian(s) the constitutional and statutory safeguards available to custodial parents.

10

"It is reasonable and necessary to remove the child from the **mother**, as such removal is defined in 45 CFR 1356.21(k)(1)(ii), and the care, custody, and control of the parent(s)/legal guardian(s) from whom the child is are [*sic*] being removed because there is a substantial danger to the physical health, safety, protection, or physical or emotional well-being, and special needs, if applicable, of the child, and there are no reasonable means by which the child's physical health can be protected, without removing the child from the home and the care, custody, and control of that or those parent(s)/legal guardian(s).

"The Court further finds that it would be detrimental to the safety, protection, or physical or emotional well-being, and special needs, if applicable, of the child to be returned to or placed in the home or the care, custody, and control of that or those parent(s)/legal guardian(s).

"The Department of Children and Family Services made reasonable efforts to prevent removal but there are no services available to prevent further detention.

"The Court orders the child removed from home and the care, custody and control of the parent(s)/legal guardian(s) from whom the child

11

is being removed and placed in the care, custody and control of the Department of Children and Family Services.

**"Family reunification, maintenance, or enhancement, or reunification services and visitation rights are granted or denied as set forth in the court ordered case plan(s) which are incorporated herein by this reference.**"

Mother contends the juvenile court's bare reference to Dependency Court Order 415 at the disposition hearing violated section 361, subdivision (e), which directs that "[t]he court *shall* state *the facts* on which the decision to remove the minor is based." (Italics added.) We agree.

"[O]ur dependency system is premised on the notion that keeping children with their parents while proceedings are pending, whenever safely possible, serves not only to protect parents' rights but also children's and society's best interests." (*In re Henry V.* (2004) 119 Cal.App.4th 522, 530.) "The requirement for a discussion by the child welfare agency of its reasonable efforts to prevent or eliminate removal [citation], and a statement by the court of the facts supporting removal [citation], play important roles in this scheme." (*In re Ashly F.* (2014) 225 Cal.App.4th 803, 810 (*Ashly F.*).) "Without those safeguards there is a danger the agency's declarations that there were 'no reasonable means' other than removal 'by which the [children's] physical or emotional health may be protected' and that 'reasonable efforts were made to prevent or to eliminate the

need for removal' can become merely a hollow formula designed to achieve the result the agency seeks." (*Ibid*.)

We understand juvenile court bench officers are increasingly incorporating Dependency Court Order 415 into the court clerk's minute order to support removal of children under section 361, subdivision (c)(1), but this order is not a replacement for a statement of the facts supporting the court's decision to remove a child from a parent's custody.  Contrary to section 361, subdivision (e)'s command to "state *the facts* on which the decision to remove the minor is based" (italics added), Dependency Court Order 415 merely recites the findings the juvenile court must draw from the supporting facts to order removal under section 361.  Incorporating Dependency Court Order 415 into a removal order without stating the facts that support removal does not comply with the mandate in section 361, subdivision (e).  The juvenile court erred by failing to state the facts supporting its decision to remove D.P. from mother's custody.  (§ 361, subd. (e); see *Ashly F., supra,* 225 Cal.App.4th at p. 810.)

The Department concedes the juvenile court erred when it removed D.P. from mother's custody without stating the facts supporting removal.  Nevertheless, the Department argues the error was "harmless" because the court still would have removed D.P. from mother's custody, even if it had reflected upon and stated the factual basis for its decision.  (See *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218 (*Jason L.*) ["[C]ases involving a court's obligation to make findings regarding a minor's change of custody or commitment have held the failure to do so will be deemed harmless where 'it is not reasonably probable such finding,

13

if made, would have been in favor of continued parental custody.' "].)  We turn to that issue now.

**2.** ***It Is Reasonably Probable that, Had the Juvenile Court Made Mandatory Factual Findings Regarding Reasonable Alternatives, It Would Not Have Removed D.P. from Mother's Custody***

Like other rulings of the trial court, when a juvenile court fails to make the factual findings required under section 361, subdivision (e), its removal order is subject to the constitutional mandate that no judgment shall be set aside "unless, after an examination of the entire cause, including the evidence, the [appellate] court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."  (Cal. Const., art. VI, § 13; *Jason L., supra,* 222 Cal.App.3d at p. 1218.)  Under this mandate, a "miscarriage of justice" will be declared only when the appellate court, after examining the entire case, is of the opinion that " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' "  (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)  A " 'probability' in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*."  (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715 (*College Hospital*).)

Mother contends the juvenile court's error was not harmless.  If the court had considered the evidence in light of section 361's mandated factual findings, she argues there is a reasonable chance the court would have concluded reasonable alternatives to removal were available.  We agree.

Section 361, subdivision (c) provides:  "A dependent child shall not be taken from the physical custody of his or her parents

14

. . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds [by] clear and convincing evidence. . . [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor *if* the minor were *returned home*, and there are *no reasonable means* by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (Italics added.) Regarding alternatives to removal, the statute directs: "The court *shall* consider, as a reasonable means to protect the minor . . . : [¶] (A) The option of *removing an offending parent . . . from the home*." (§ 361, subd. (c)(1), italics added.)

Section 361, subdivision (c) embodies the Legislature's preference for " 'maintaining children in their natural parent's homes where it [is] safe to do so.' " (*In re Jasmine G.* (2000) 82 Cal.App.4th 282, 288, quoting *Jason L.*, *supra*, 222 Cal.App.3d at p. 1216; see also *In re Henry V., supra,* 119 Cal.App.4th at pp. 528, 530.) Under the statute, the juvenile court cannot remove a dependent child from the physical custody of the "parents . . . with whom the child resides," unless the court finds (1) the child would be substantially endangered if "returned home"; and (2) "removing an offending parent . . . from the home" is not a reasonable means to protect the child if the child is "returned home." (§ 361, subds. (c)(1), (c)(1)(A).)

Based on our review of the entire case, we conclude it is reasonably probable that the juvenile court would have found "removing [the] offending parent [mother] . . . from the home" (§ 361, subd. (c)(1)(A)) was a reasonable means to protect D.P. from the substantial harm he otherwise would face "if [he] were returned home" (§ 361, subd. (c)(1)). When the Department filed

15

the dependency petition, D.P. resided in the family home with father and mother, although mother had recently moved out of the home to comply with father's restraining order. At the time of the disposition hearing, D.P. and father continued to reside in the family home, while mother lived elsewhere under the restraining order. The juvenile court, without stating the facts supporting its decision as required under section 361, subdivision (e), removed D.P. from mother's physical custody, and returned him to father's custody, in the home where he resided when the dependency petition was initiated. In issuing the disposition order, the court noted father had an active restraining order barring contact between the parents and requiring mother to stay away from the family home.

Based on this record, it appears the juvenile court concluded, consistent with the *alternative to removal* specified in section 361, subdivision (c)(1)(A), that D.P. could be safely "returned home," given that mother had been effectively removed from the home under the restraining order. Thus, it is reasonably probable that, had the juvenile court reflected upon and stated the facts as required under section 361, it would have found D.P. was reasonably protected under the restraining order, and removing him from mother's physical custody was unnecessary to ensure his safe return home. (See, e.g., *Ashly F., supra,* 225 Cal.App.4th at p. 810 [juvenile court prejudicially erred in failing to consider option of removing offending mother from home when "evidence showed that [this option] was available," since "[m]other removed herself from the family home following the detention hearing"]; *In re N.S.* (2002) 97 Cal.App.4th 167, 172, fn. 5 [juvenile court exceeded its jurisdiction by removing child from parents' custody, while

16

returning her home to mother's custody; thus, appellate court would "presume the court intended to issue an order leaving [child] in her mother's custody and limiting [father]'s control over her by removing him from the home," consistent with " 'option of removing an offending parent or guardian from the home' "].)

Notwithstanding the juvenile court's failure to make the mandated removal findings, and the court's effective adoption of a statutory alternative to removal, the Department argues there is no possibility that the court would have declined to remove D.P. from mother's custody, even if it had considered other options. The Department relies on *In re Michael S.* (2016) 3 Cal.App.5th 977 (*Michael S.*). The case is inapposite.

In *Michael S.*, the reviewing court soundly reasoned that section 361 "does not, by its terms, preclude the possibility of ordering both removal of the parent from the home and removal of the child from the parent," because subdivision (c)(1)(A) "does not state that the option of removing a parent from the home will *necessarily* be sufficient to protect the child in all cases even if ordered." (*Michael S., supra,* 3 Cal.App.5th at p. 984.) The *Michael S.* court expressly did not consider, as we must, whether the juvenile court's erroneous failure to state the facts supporting removal prejudicially affected its custody determination. (See *id.* at pp. 986–987.)[5] Here, because the record indicates "more than

---

[5] With respect to the juvenile court's removal findings, the *Michael S.* court observed: "The court did not state the facts on which this conclusion was based. [Citation.] However, on appeal Father does not challenge the sufficiency of the evidence underlying the court's removal order, but argues only that the court was precluded from considering the option of removal as a matter of law. Because we reject that legal argument, we affirm." (*Michael S., supra,* 3 Cal.App.5th at p. 987.)

17

an *abstract possibility*" that the juvenile court would have adopted the alternative to removal set forth in section 361, subdivision (c)(1)(A) had it considered the option, the court's error was not harmless. (*College Hospital, supra,* 8 Cal.4th at p. 715; *Ashly F., supra,* 225 Cal.App.4th at p. 810.)

**3.  *The Juvenile Court Reasonably Exercised Its Discretion to Require Monitored Visitation***

"Visitation shall be as frequent as possible, consistent with the well-being of the child."  (§ 362.1, subd. (a)(1)(A).)  The power to regulate visits between dependent children and their parents rests with the juvenile court and its visitation orders will not be disturbed on appeal absent an abuse of discretion.  (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 756; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

The juvenile court granted mother monitored visits with D.P. a minimum of three times each week for three hours each visit, and vested the Department with authority to liberalize visitation at its discretion.  Mother argues the court exceeded its authority by restricting her to monitored visits, which she contends was not necessary to protect D.P.  We disagree.  Although mother cites evidence suggesting she was working toward eliminating the issues that warranted dependency jurisdiction, such as her participation in counseling and her clean alcohol tests, she fails to acknowledge substantial evidence supporting the court's implicit determination that unmonitored visitation could place D.P. at risk.

The most troubling evidence concerned mother drinking in her car and while caring for D.P.  Her alcohol abuse also diminished the efficacy of mother's psychotropic medication, causing her to have manic and violent episodes that included

18

throwing dishes and smashing the walls and floors of the family home with a hammer.  Although mother had never been directly violent toward D.P., the evidence showed she threatened father with a knife while he held the child, and D.P. reported witnessing mother throw dishes when she was angry.  In view of mother's unpredictable manic episodes, her history of alcohol abuse, and her frequent failure to take prescribed medication, the juvenile court reasonably exercised its discretion to limit mother to monitored visits until the Department determined it would be safe to liberalize visitation.

4.      ***The Juvenile Court Reasonably Exercised Its Discretion to Order Services for the Safe Custody, Maintenance, and Supervision of D.P.***

Section 362, subdivision (d) authorizes the juvenile court to "direct any reasonable orders to the parents" of a dependent child as the court deems necessary and proper to ensure appropriate care, supervision, custody, conduct, maintenance, and support of the child.  (See also § 362, subd. (a).)  The order may include "a direction to participate in a counseling or education program," provided that the "program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300."  (§ 362, subd. (d).)

We review the juvenile court's disposition case plan for an abuse of discretion.  "The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly.  On appeal, this determination cannot be reversed absent a clear abuse of discretion."  (*In re Baby Boy H*. (1998) 63 Cal.App.4th 470, 474; see also *In re Christopher H*. (1996) 50 Cal.App.4th 1001, 1006.)

19

Mother contends the order to participate in a full drug and alcohol program with aftercare as well as a 12-step program with a court card and sponsor was "unjustly burdensome" in view of evidence that she was also "managing her mental health, single parenting, eviction from housing, and a host of other programming." Juvenile courts should be mindful of the burdens their disposition orders impose on parents already grappling with difficult conditions and circumstances. However, the paramount concern always must be the child's best interests, and we cannot reverse a disposition order reasonably fashioned to eliminate the conditions that led to dependency jurisdiction, no matter how burdensome its requirements may seem from the parent's perspective. (See § 362, subd. (d); *In re Baby Boy H., supra,* 63 Cal.App.4th at p. 474.) The record shows mother had persistent issues with alcohol that contributed to dangerous manic episodes in D.P.'s presence. That evidence is sufficient to support the juvenile court's alcohol treatment orders.

Mother also challenges the order to participate in a domestic violence program. She maintains there is "no evidence" that she "ever battered Father or anyone else" and claims it is unfair that she was ordered to domestic violence classes when father was the true perpetrator of the violence in their relationship. Contrary to mother's assertion, D.P. himself witnessed and reported that mother threatened father with a knife while father held the child. He said " 'my mom almost killed him because she was mad.' " (Boldface omitted.) He added, " 'My mom is always mad and yelling at my dad.' " (Boldface omitted.) And D.P. recalled that, apart from the knife incident, mother would " 'throw[ ] dishes' " in the house when she became angry. (Boldface omitted.) Based on that evidence, the

20

juvenile court reasonably exercised its discretion to order mother to participate in domestic violence classes.

## DISPOSITION

The removal order is reversed. The disposition order is affirmed in all other respects.


EGERTON, J.

We concur:



EDMON, P. J.



DHANIDINA, J.

Filed 2/6/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re D.P., a Person Coming Under the Juvenile Court Law. | B295780 |
| _____ | Los Angeles County Super. Ct. No. 18CCJP07818B |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | ORDER CERTIFYING FOR PUBLICATION [NO CHANGE IN JUDGMENT] |
| v. | |
| J.P., | |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter, filed on January 8, 2020, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports.

There is no change in the judgment.

_____
EGERTON, J.                EDMON, P. J.                DHANIDINA, J.