Filed 9/13/21  In re S.C. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re S.C. et al., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>J.O.,<br><br>　　　Defendant and Appellant. | A161711<br><br>(City & County  of San Francisco Super. Ct. No. JD20-3175, JD20-3175A) |

In this dependency action, J.O. (Mother) appeals jurisdictional and disposition orders of the juvenile court declaring her two children dependents and placing them in the home of their father.  She contends on appeal that the evidence was insufficient to declare her younger child, J.C., a dependent and remove her from Mother, that the petition should have been dismissed as to J.C., and that the visitation orders did not serve either child's best interests.  We shall affirm the orders.

**FACTUAL AND PROCEDURAL BACKGROUND**

The children in this case are S.C. and J.C., who were 13 and five years old respectively at the time of the proceedings at issue.  A dependency

1

petition (Welf. & Inst. Code, § 300)[1] was filed on July 10, 2020.  As amended a month later, the petition alleged that both S.C. and J.C. had suffered or were at risk of serious physical harm inflicted nonaccidentally by a parent (§ 300, subd. (a)) and serious physical harm through their parents' failure to protect them (§ 300, subd. (b)), and, as to S.C. only, that she was at risk of serious emotional harm from Mother's conduct (§ 300, subd. (c)).

*Events Leading to Agency Intervention*

The petition was filed after the San Francisco Human Services Agency (the Agency) received a report that Mother had physically abused S.C. and that J.C. was at risk of abuse.  On June 29, 2020, S.C. and Mother became involved in a physical altercation.  According to the petition, Mother hit S.C. with a broom and dustpan on her lower bottom, and S.C. used her hand to block a blow.  S.C. reported that Mother punched her, pulled her hair, and spat on her face.  S.C. tried to hit Mother in self-defense and she scratched Mother under the eye.  Mother called the children's father, J.C. (Father) and asked him to come home; when he did so, he and Mother agreed he would take S.C. with him to work, but when he started to leave the home with S.C., Mother grabbed him to try to stop him from leaving and broke his eyeglasses.  Father took S.C. to the hospital because of pain in her finger.  S.C. was found to have no broken bones, but she had abrasions to both thighs, bruises with a shape consistent with being struck with a stick, and scratches on both hands and wrists.

Mother's version of the June 29 incident was that she and S.C. argued and the argument "got physical"; S.C. was angry and blocked her bedroom door with a dresser, and she smashed a full-length mirror and sat on her bed holding a shard of glass.  Mother was frightened that S.C. might be

---

[1] All statutory references are to the Welfare and Institutions Code.

contemplating suicide, and she went into the room and started cleaning up the shards of glass.  S.C. punched Mother on the head, and Mother swatted her off with a dustpan and held her down on the bed.  Mother called Father, who returned from work.  Mother became angry at him, he screamed at her, and she broke his glasses.  She testified the bruises on S.C.'s legs might have been caused by S.C. harming herself.

Mother and S.C. had been involved in another physical confrontation several months previously, in which, according to S.C., Mother slammed S.C.'s head on the kitchen counter.  S.C. had a headache the next day.  She did not tell Father about the incident until months later, and when she did so, he told her to tell him immediately if such a thing happened again.

J.C. was home at the time of the June 29 altercation.  Father reported that Mother did not have the same dynamics with J.C., who was five years old and still being breast-fed, that she did with S.C.  Father said Mother was good with young children.

Father described Mother as irrational, saying she argued with "everyone" and she was paranoid and suspicious that people were "after her." Mother told a social worker she was not willing to engage in family therapy unless it was court-ordered.  Father was willing to participate in therapy, and he had been contacting his insurer and employment resources to secure services.

*Physical Altercation After Petition Was Filed*

On the evening of July 31, 2020, Mother and Father argued, and Mother threw a trash can at his leg in their bedroom, causing a laceration to his shin.  She later punched him on his arms, shoulders and back in S.C.'s presence in S.C.'s bedroom, yelled at Father and S.C. and called them names, and threw an open can of chili at S.C.  The can hit the wall, and the chili

3

splattered on S.C.  S.C. positioned herself against the bedroom door to keep Mother from coming in again.  J.C., who was downstairs in the small apartment, could hear Mother screaming and yelling and S.C. sobbing; she intervened by asking Mother to take her for a walk and trying to pull her outside.

Mother took the position that the July 31 incident was occasioned by Father "bait[ing]" her by "giving [her] a hard time," lying in bed "silently smirking at [her]," and taking pictures.  She admitted she threw a small waste basket at Father.  She acknowledged "knock[ing] over" the can of chili on the windowsill of S.C.'s room because she was upset S.C. had left dirty dishes outside her room and on the windowsill.  She denied throwing anything at S.C. and denied that her actions endangered anyone.  She thought J.C. asked her to go for a walk during the July 31 incident so she could get away from the "abusive" behavior of Father and S.C.

Father called the police after the July 31 incident, Mother was arrested, and an emergency protective order was issued.  Mother told the police she had only had a verbal argument with Father.  Mother was released three days later, and the charges against her were dismissed.

Father reported that Mother had " 'no off switch.' "  He said that when Mother became upset he and S.C. would go into another room, and J.C. would interrupt Mother and ask to go on a walk.

S.C., who had a girlfriend, reported that Mother was homophobic and targeted S.C., and that she called S.C. names such as " 'dike and traitor.' "

*Detention and Restraining Order*

The juvenile court temporarily detained the children from Mother and placed them with Father under the Agency's supervision.  By the end of

4

August 2020, Father had filed for divorce and Mother was residing in Canada.

Father applied for and on August 27, 2020 was granted a three-year restraining order protecting him and both children from Mother, but the court ordered non-forced supervised visits between Mother and the children. Mother did not appeal from this order.[2]

The children continued to live with Father. S.C. asked to be called by a different name, with preferred pronouns of he/ze.[3] Mother, who was still living out of the country and had not reported any plans to return to the United States, was visiting virtually with the children twice a week. By early November S.C. had said he no longer wished to visit with Mother, but J.C. enjoyed seeing Mother and the visits were positive.

*Jurisdiction and Disposition*

At the November 23, 2020 jurisdictional and dispositional hearing, the trial court sustained counts alleging the children had suffered, or there was a substantial risk they would suffer, serious physical harm or illness as a result of the parents' failure to protect them (§ 300, subd. (b)) and that S.C. was at risk of serious emotional damage (§ 300, subd. (c)). It struck allegations that

[2] The December 23, 2020 notice of appeal in this case recites it is from temporary and permanent restraining orders, but it incorrectly states they were issued on November 23, 2020, the same date as the jurisdictional and dispositional orders we shall shortly discuss. Because the permanent restraining order was issued on August 27, 2020, the notice of appeal was untimely to the extent Mother purported to appeal from the restraining order. (Cal. Rules of Court, rule 8.406.) In her brief on appeal, Mother raises no issues as to the propriety of the restraining order except, indirectly, as to its limitations on visitation with her children.

[3] For purposes of this opinion we will continue to use the initials S.C., which correspond to the name contained in the sustained petition, but will henceforth refer to S.C. by the pronoun "he."

the children had suffered or were at risk of serious physical harm inflicted nonaccidentally (§ 300, subd (a)) and that Father had been unsuccessful in protecting S.C. from physical abuse by Mother.  The court declared the children dependents.

As to disposition, the court placed the children in Father's home under the Agency's supervision.  The court ordered family maintenance services for Father, services his counsel said he welcomed and found helpful.  The court-ordered services included participation in a domestic violence assessment and recommended treatment or support, individual therapy, and, if recommended by the children's therapist, family therapy.

S.C. told the court he did not want to have contact with Mother. Supervised visitation was ordered between Mother and the children, the visits with S.C. to take place "when it's therapeutically appropriate, and that's going to be up to [S.C.'s] therapist."

## DISCUSSION

### I. Evidence of Jurisdictional Findings

Mother challenges the sufficiency of the evidence to support the allegations under section 300, subdivision (b)(1) and (c) that J.C. was at risk, respectively, of serious physical harm from failure to protect and emotional harm.  She does not challenge the jurisdictional findings regarding S.C.

To establish jurisdiction under section 300, subdivision (b)(1), the Agency "must prove by a preponderance of the evidence that there was neglectful conduct by the parent . . . ; causation; and ' "serious physical harm or illness" ' to the child or 'substantial risk' of such harm or illness." (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.)

Harm or risk for purposes of section 300, subdivision (b) may be shown by a child's exposure to domestic violence, even if not directed toward the

6

child.  "[D]omestic violence in the same household where children are living *is* neglect; it is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it.  Such neglect *causes* the risk." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194.)  The court in *Heather A.* explained that the danger from domestic violence could come from "wander[ing] into the room where it was occurring and be[ing] accidentally hit by a thrown object, by a first, arm, foot or leg, or by [someone] falling against them." (*Ibid.*; accord *In re R.C.*, *supra*, 210 Cal.App.4th at pp. 941–942 [following *Heather A.* and noting detriment to children from spousal abuse in household, even if child does not witness it].)

Although there is no indication that violence was directed toward five-year-old J.C., the evidence is sufficient to support a finding she was at risk of harm from Mother's physically violent altercations with S.C. and with Father.  J.C. was in the family's small apartment at the time of at least two such episodes.  She was downstairs during the June 29, 2020 incident when Mother hit S.C. with a broom and dustpan hard enough to cause bruises and abrasions and broke Father's eyeglasses.  J.C. was again downstairs a month later when Mother threw a trash can at Father in the couple's bedroom, then hit and punched Father in S.C.'s bedroom and threw a can of chili at S.C.; J.C. heard the events and tried to intervene by trying to pull Mother out for a walk.  The juvenile court could reasonably conclude that domestic violence in the home placed J.C. at risk of physical harm either by being in the same room while hard objects and blows were being thrown or by trying to intervene to halt the violence.

Mother also argues the evidence does not support an assumption of jurisdiction over J.C. on a theory she was at risk of suffering serious emotional harm.  (§ 300, subd. (c).)  This contention is meritless.  First, we

have already concluded the court properly took jurisdiction of J.C. under subdivision (b), and we therefore need not consider whether any other grounds for jurisdiction are supported by the evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

The more fundamental reason Mother's argument fails is that the petition's subdivision (c) allegation of emotional harm applies only to S.C., not to J.C. The petition contains separate information pages for the two children. On the page with S.C.'s name and identifying information, the boxes for subdivisions (a), (b)(1), and (c) are marked where the form asks what subdivisions are the bases for jurisdiction, but the page with J.C.'s name and information has marks only on the boxes for subdivisions (a) and (b)(1). And while the header of the pages containing the subdivision (a) and (b) allegations contain the names and case numbers of both children, the page with the subdivision (c) allegation contains only S.C.'s name and case number. Although the court stated before making its ruling that both children were at risk of emotional harm, there is no indication the petition was amended to add a subdivision (c) allegation as to J.C. Since there were no emotional harm allegations regarding J.C., the court's finding that "all the allegations other than the A allegations are true" can refer only the allegations that were actually pled regarding J.C., allegations that did not include emotional harm.

## II. Dismissal of the Petition as to J.C. Was Not Required

Mother contends the juvenile court abused its discretion in declaring J.C. a dependent rather than dismissing the petition as to her. According to Mother, the juvenile court could have protected J.C. without court intervention by placing her either in Mother's care or in the parents' shared

8

custody. This claim fails, both because it was forfeited in the trial court and on the merits.

Section 390 provides that a juvenile court may dismiss a petition if it finds that the interests of justice and the welfare of the child require the dismissal *and* that the parent is not in need of treatment or rehabilitation. Dismissal is appropriate only if the court makes both of these findings, and " 'such dismissals are rare and usually occur only when the goal of protecting the child has been achieved without court intervention.' " (*In re Carl H.* (2017) 7 Cal.App.5th 1019, 1038–1039.) We review an order denying a request to dismiss a dependency petition for abuse of discretion. (*In re K.S.* (2016) 244 Cal.App.4th 327, 339–340; *In re Destiny D.* (2017) 15 Cal.App.5th 197, 207.)

Mother did not ask the juvenile court to dismiss the petition as to J.C. once it found J.C. fell within section 300, subdivision (b)(1). She has accordingly forfeited the issue. The general rule that "a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court" applies to dependency matters. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Mother argues the rule of forfeiture does not apply to challenges to the sufficiency of the evidence (*In re P.C.* (2006) 137 Cal.App.4th 279, 287–288), but our inquiry here is not into whether substantial evidence supports the juvenile court's action but whether the court abused its discretion in failing to grant a motion that was never made. (*In re K.S., supra,* 244 Cal.App.4th at pp. 339–340; see *In re Ana C.* (2012) 204 Cal.App.4th 1317, 1326 [rule of forfeiture appropriately applied to "fact-driven issue in which the trial court exercises its discretion"].)

In any event, even if the issue is not forfeited there was no abuse of discretion. We have already concluded the evidence supports the juvenile

court's finding that J.C. is a child described by subdivision (b)(1) of section 300. As explained in *In re E.A.* (2018) 24 Cal.App.5th 648, 665, the inquiry into whether a petition should be dismissed under section 390 is not limited to "the four corners of the petition," and if children are described under section 300, "dismissal would clearly not be in the interests of justice or consistent with their welfare." Although the court struck allegations of Father's neglect, the evidence shows he engaged in angry confrontations with Mother while J.C. was in the home, and he welcomed the services—which included therapy and a domestic violence assessment—that were being provided to assist him and the children. Even if the issue had been preserved for appeal, the juvenile court could reasonably conclude Father was in need of treatment and rehabilitative services to assist him in caring safely for both children. It did not abuse its discretion in declaring J.C. a dependent and ordering services.

## III.    Removal of J.C.

Mother next argues the evidence does not support a finding under section 361, subdivision (c) that J.C. should be removed from her care. Under that provision, a dependent child may not be taken from the "physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated" unless the court makes one of several removal findings by clear and convincing evidence; one of those findings is that there would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if the child were returned home and there are no other reasonable means to protect the child's physical health. (§ 361, subd. (c)(1).) As an alternative to removal, the court may consider removing an offending parent from the home or allowing a nonoffending parent to

10

retain physical custody with a plan to protect the child. (§ 361, subd. (c)(1)(A) & (B).)

The juvenile court neither removed the children from the home nor made findings supporting removal from Mother under section 361, subdivision (c). Rather, it placed the children at home with Father and ordered family maintenance services. Mother's exclusion from the family home and limited access to the children result from the restraining order, which she did not appeal. In support of her argument that the children were removed, Mother notes that on the written dispositional order, there are checks by the boxes indicating that the facts on which the decision to remove the children are found in the sustained petition and that reasonable efforts had been made to prevent the need to removal. But, notably, the court did *not* check any of the boxes for the section 361, subdivision (c) findings supporting removal and it did not state it was removing the children from Mother. The notations to which Mother refers do not show the children were removed from her under section 361, subdivision (c).

We recognize it is possible to enter orders both restraining a parent from contact with a child and removing the child from that parent's custody, and this may be particularly appropriate when the parents maintain separate residences. (*In re Michael S.* (2016) 3 Cal.App.5th 977, 984–985.) But, as *Michael S.* acknowledges, under section 361 a removal order may be unnecessary when the child can be protected by placing the child with only the nonoffending parent. (*Id.* at pp. 983–984, citing § 361, subd. (c)(1)(A) & (B); accord, *In re D.P.* (2020) 44 Cal.App.5th 1058, 1068–1069.) That is what the juvenile court did here. Because it did not make an order removing J.C. from Mother, we need not consider the sufficiency of the evidence to support the findings that would be required.

11

## IV. Visitation

Mother's final contention is that the juvenile court improperly limited her visitation with the children. When a court adjudges a child a dependent under section 300, it may "make any and all reasonable orders" for the child's care, supervision, and custody. (§ 362, subd. (a); *In re Briana V.* (2015) 236 Cal.App.4th 297, 311.) We review the visitation orders for abuse of discretion (*In re Alexandria M.* (2007) 156 Cal.App.4th 1088, 1095), which Mother has not shown.

When it issued the restraining order on August 27, 2020, the juvenile court ordered supervised virtual visitation between Mother (who was living in Canada) and the children, with supervised in-person visits when appropriate in light of the COVID-19 pandemic. Before making its dispositional orders, the court asked S.C. about his wishes for contact with Mother, and S.C. said he did not want contact. The court told S.C. that while he "has a voice in these proceedings[,] . . . there will come a time hopefully sooner rather than later that you will want to have some visitation with your mother." The court again ordered supervised visits, which S.C. "can work up to with his mother with appropriate therapy." The clerk asked for clarification of whether the supervised visits would take place "when the minors are ready" and the court answered, "Well, the supervised visits when it's therapeutically appropriate, and that's going to be up to [S.C.]'s therapist." The court went on, "But . . . the order is that they do happen." The court asked S.C. if he understood why it was ordering visits, and S.C. replied, "Yeah, kind of." The court continued, "Does that make sense?" and S.C. answered, "Yeah."

Mother contends the visitation the court ordered was inadequate, particularly as to S.C., which she characterizes as a "near elimination of

12

visitation." And, she argues, the limited visitation that was ordered risks alienating the children from her, making it more difficult for her to reunite with them.

We see no abuse of discretion in the juvenile court's ruling. Visitation is " 'an essential part of a reunification plan.' " (*In re Korbin Z.* (2016) 3 Cal.App.5th 511, 517.) Here, of course, the children were not removed from their home with reunification services; rather, they were placed at home in Father's care with family maintenance services. And in fact, Mother *was* provided with visitation. She was subject to a restraining order, which "carve[d] out" an exception for supervised visitation. She was visiting virtually with J.C. twice a week—during which S.C. would "stop by to say hi" to her—and she does not show that the dispositional order altered the frequency of these visits, that they were inadequate for her to maintain a relationship with J.C., or, for that matter, that she sought more frequent visits. Mother points out correctly that the written dispositional order provides for supervised visits "when therapeutically appropriate as directed by the minors' therapist," but in the context of the oral record of proceedings, it is clear this limitation applies only to S.C. As to J.C., Mother has not shown she has been deprived of adequate visitation, nor that she has sought and been denied increased visitation.

As to S.C., Mother argues that the juvenile court improperly left to the minor or his therapist the decision whether visitation would take place at all. (See *In re Korbin Z.*, *supra*, 3 Cal.App.5th at pp. 516–517; *In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1357–1358.) Mother is correct that "the juvenile court cannot delegate the decision whether visitation will occur to any third party, including the child, the social services agency, or" the child's therapist. (*Korbin Z.*, at p. 516.) But a visitation order may delegate

" 'responsibility for managing the details of visits, including their time, place and manner.' " (*Id.* at p. 517.) We are unconvinced that the court here transgressed this legal standard. The record shows that the court sought to persuade S.C. to participate in visits voluntarily and that it delegated to the therapist the decision as to when exactly such visits were therapeutically appropriate, but the court also made clear that visits with S.C. must in fact occur. Although there is some ambiguity in the record, we conclude mother has not established the court abused its discretion in this ruling. Nothing we say, however, prevents Mother from raising the issue of visitation in further proceedings, if circumstances change (or have changed) or if regular visitation with S.C. has not taken place despite the juvenile court's order.

## DISPOSITION

The November 23, 2020 orders are affirmed.


TUCHER, J.[*]


WE CONCUR:

STREETER, Acting P.J.
BROWN, J.


*In re S.C.* (A161711)

---

[*] Presiding Justice of the Court of Appeal, First Appellate District, Division Three, sitting by assignment pursuant to article VI, section 6 of the California Constitution.

14