Filed 4/12/22  In re Chris S. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Chris S. et al., | B312193 |
| Persons Coming Under Juvenile Court Law. | (Los Angeles County Super. Ct. No. 20CCJP01821) |
| _____ | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| Y.S. et. al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stacy Wiese, Judge.  Affirmed.

Serobian Law, Inc., and Liana Serobian, under appointment by the Court of Appeal for Defendant and Appellant Y.S.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant C.P.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

_____

Defendant Y.S. (Mother) appeals jurisdictional and disposition findings as to her four children Chris, Michael, Nathan, and Jacob. Mother contends there is insufficient evidence to support the juvenile court's findings that she failed to protect the children from substantial risk of harm due to father's ongoing abuse of Mother and the parents' minimization of the violence that occurred in the presence of the children.

Codefendant C.P. (Father) challenges the dispositional order removing Jacob (born Sept. 2018) from his custody based on domestic violence and alleged substance abuse, contending the court failed to consider the alternative of removing father from the family home, as required under Welfare and Institutions Code section 361, subdivision (c). We conclude that substantial evidence supports the jurisdictional and dispositional findings, reject the parents' additional contentions, and affirm the orders as to all four children.

# FACTUAL AND PROCEDURAL BACKGROUND

1. *Factual Background*

Mother Y.S. has two children with Father, including 18-month old Jacob P. (born Sept. 2018).[1] Mother has two children with G.G. (12-year-old Chris and 11-year-old Michael) and one child with M.G. (three-year-old Nathan S.). Only Mother and Father are parties to this appeal.

    a.     *August 2019 Domestic Violence Incident and Father's Conviction*

In August 2019, Mother and Father engaged in a violent altercation wherein father strangled Mother between five and ten seconds. Mother pulled Father's hair until he let her go. Father shoved Mother as she held Jacob, and Chris witnessed the altercation. Mother sustained injuries to her throat, and Father was arrested for domestic violence. The family was referred to the Department of Children and Family Services ("DCFS" or "the Department"). Mother stated there were three prior incidents of domestic violence with Father that went unreported; Father disclosed there were five prior incidents. Mother claimed she was no longer in a relationship with Father and she planned to file for a restraining order and custody of Jacob.

On September 10, 2019, Father was convicted of perpetrating domestic violence against Mother. On September 19, 2019, Mother was

---

[1] In April 2021, Mother and Father gave birth to another child that is not a party to this appeal.

granted a two-year restraining order, protecting her and her children from Father. In her application, Mother declared that the children were "minors and have witnessed [Father's] abuse." She further declared that during the August 2019 incident, Father had pushed her hard in the chest, lunged towards her, grabbed her neck and strangled her, leaving red marks and soreness. Mother stated she was afraid to serve Father with the notice of her request for a restraining order, for fear that Father would retaliate with additional violence.

Father was ordered to stay away from Mother and the children, was required to stay away from the family home, and was prevented from visiting the children's schools. Mother was granted sole physical and legal custody of Jacob; Father was permitted unmonitored visitation for up to four hours per week on the condition that Father not consume alcohol for 12 hours prior to his visitation.

b.  *October 2019 Domestic Violence Incident*

On October 6, 2019, Father again assaulted Mother. Mother took the children to the maternal grandfather's home for a visit with Father. During the visit, Father became upset, grabbed Mother by the throat, and slammed her against the wall several times. Mother screamed for help. Witnesses told Father to stop and he left. The children heard yelling, but did not see the altercation. A witness called police, and when police arrived, Mother was cooperative, but did not want to report the incident. Mother had a bruise on her neck, on the back of her head, and on her right forearm. She told police these injuries occurred during another violent incident that occurred at her home three days earlier.

4

Mother subsequently told DCFS that she mistakenly thought it was Father that had assaulted her, but that it was actually an "unknown purse attack[er]." Mother disclosed that Father comes to visit Jacob, as he is permitted unsupervised visits with Jacob four hours per week. Father denied being in a relationship with Mother. Mother and Father were told by the Department to follow the restraining order and not allow visits at Mother's home.

2.  *Instant Referral to DCFS*

In February 2020, DCFS received a referral regarding concerns of general neglect, after Michael was dropped off at Chris's school and left unsupervised. DCFS subsequently learned the parents were violating the restraining order by allowing father to live in the family home, have unfettered access to the children, and transport Chris and Michael to school.

When interviewed, Mother stated she and Father lived together with the children. Mother denied any recent domestic violence, as did Father, Chris and Michael.[2] Both Mother and Father explained that they believed their prior case had been closed, that there was no longer a restraining order, and that it was okay for them to live together.

After Mother's first meeting with the investigating social worker, Mother re-enrolled in a domestic violence program. Likewise, Father re-enrolled in a domestic violence program and a parenting class. Father also moved from the family home, acknowledged the

[2]     Nathan and Jacob were too young to provide a meaningful statement.

5

existence of the restraining order, and agreed to stay away from Mother and the children with the exception of his visits with Jacob.

3. *Section 300 Petition and Detention Hearing*

On April 1, 2020, DCFS filed a petition under Welfare and Institutions Code section 300[3] petition, alleging the four minors were subject to juvenile court jurisdiction pursuant to section 300, subdivisions (a) and (b)(1) due to Mother and Father's history of engaging in violent altercations, Mother's failure to protect the children by allowing Father to continue to reside in the home and have unfettered access to the children (allegations a-1 and b-1), and Father's abuse of alcohol (allegation b-2.)

On April 3, 2020, the juvenile court found a prima facie showing had been made, ordered the three older children released to Mother and ordered Jacob released to Mother and Father on the condition that they live in separate residences and abide by the previous custody orders.[4] The court further ordered that DCFS assess the family for services, including referrals for classes and programs. The court set an adjudication hearing for June 19, 2020, but due to the COVID-19 pandemic, and other delays, the jurisdiction hearing did not take place until February 22, 2021.

---

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[4] The court stated it was not ordering detention of Jacob from Father because there was a family law order already in place.

4.    *Further Investigation, Classes, and Services*

    a.    *Interviews with Family Members*

In June 2020, the Mother and the children were re-interviewed about the parents' domestic violence. Mother stated that Father never strangled her and that the information in the reports was fabricated. According to Mother, there had only been a one-time physical incident wherein Father pushed her with one hand. Father was upset because of a misunderstanding. Mother stated she bruises easily and she never wanted a restraining order, but felt pressured by law enforcement and DCFS. Mother resumed living with Father after his domestic violence conviction. Chris and Michael had no recollection of witnessing any domestic violence or seeing Mother with visible marks or bruises.[5]

In an interview conducted in November 2020, Father claimed the domestic violence reports were fabricated and denied that he ever strangled, hit, or pushed Mother. Father indicated that he simply placed his hand on Mother's chest in order to get her to stop arguing with him. Father denied having any other physical altercations with Mother.

    b.    *Classes and Services*

In September 2020, family preservations services were terminated due to Mother's failure to follow through with appointments. In

---

[5]    In their February 2020 interview, Chris and Michael also denied there was any domestic violence in the home.

addition, Mother informed DCFS that she was not enrolled in domestic violence classes because the program was closed. Later that same month, Mother provided a four-sentence letter from Family Crisis Center, stating Mother had received biweekly domestic violence sessions since October 2019 with the goal of "educat[ing] client with identifying Red Flags (batterers) and having coping skills." In October 2020, Mother enrolled in a virtual domestic violence program. By December 2020, Mother had attended five out of the twelve program classes. Regarding progress, Mother's program provider noted that Mother was doing "okay." In February 2021, Mother completed a parenting program and continued in her domestic violence counseling, completing eight of twelve classes. Mother's counselor noted Mother's participation was "fair but could be better."

By September 2020, Father had participated in 34 domestic violence classes and 29 parenting classes. That same month, DCFS was informed that Father visited Mother and the children at the family home, and Father was seen leaving the family residence at 7:00 a.m., which was in violation of the restraining order. In December 2020, Father continued his participation in a court-ordered 52-week domestic violence program for batterers and completed 46 of 52 classes. Father completed his 52-week domestic violence program in February 2021.

5. *Jurisdiction Hearing*

The jurisdiction hearing took place on February 22, 2021. Mother appeared with her attorney. Father was absent, but his attorney asked

to proceed nonetheless. After receiving documentary evidence, the matter proceeded by way of argument.

Regarding jurisdiction, the juvenile court sustained the domestic violence allegations, finding the parents' violent altercations and Mother's failure to protect the children from father, placed the children at substantial risk of harm. The court rejected the parents' contention that there was only one prior incident of violence, finding the parents' previous statements about there being multiple violent altercations in the presence of the children to be more reliable.

The court found that DCFS had made the requisite showing, sustained allegations a-1 and b-1 of the petition, but dismissed count b-2.[6]

After the court sustained the section 300 petition, Father requested the restraining order protecting Mother and the children be terminated. Mother joined in Father's request, and the juvenile court terminated the restraining order.

6. *Disposition Hearing*

The disposition hearing was conducted on April 14, 2021. For disposition, DCFS submitted updated reports, noting Mother completed her 12-session domestic violence program and continued in weekly

---

[6] Although the court dismissed the alcohol abuse allegation, it expressed concern over Father's prior DUI and his repeated failure to appear for random drug testing—twice in December, three times in January and once in February. DCFS noted the restraining order stated that Father was to refrain from any use of alcohol within 12 hours of visiting with Jacob.

individual counseling. In addition, Mother gave birth to another child with father.

At disposition, DCFS recommended the children remain in Mother's custody with orders that Mother participate in a domestic violence support group, parenting class, individual counseling to address domestic violence, and family preservation. Mother submitted on DCFS's recommendation. Father requested that he be allowed to return to the family home.

The juvenile court declared the children dependents, ordered Chris, Michael and Nathan removed from their fathers custody and, noting concerns of domestic violence and substance abuse allegations, ordered Jacob removed from Father's custody.

The juvenile court then ordered all four children placed with Mother under a family maintenance plan with enhancement services and unmonitored visitation for Father. Father was also ordered to participate in a 52-week domestic violence program for perpetrators, parenting education, on-going random and/or on-demand drug testing, and individual counseling. The juvenile court authorized Father to return to the family home upon completion of five clean drug tests.[7]

Mother and Father filed timely notices of appeal from the jurisdictional and dispositional orders.

---

[7]    In issuing these orders, the court noted that Mother had already completed the domestic violence support group and parenting components of her case plan. The court also commended Father for completing his 52-week domestic violence program, but noted he had repeatedly been a no-show for substance abuse testing.

## DISCUSSION

I.   *Substantial Evidence Supports the Jurisdictional Findings*

   A.   *Standard of Review*

We review the juvenile court's jurisdictional findings for substantial evidence.  (*In re John M.* (2013) 217 Cal.App.4th 410, 418.)  Applying this standard, we examine the record in the light most favorable to the juvenile court's findings and conclusions and defer to that court's factual assessments and credibility determinations.  (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1427.)  If supported by substantial evidence, the findings will be upheld even if substantial evidence may exist to support a contrary finding.  (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

   B.   *Controlling Law, Section 300, subdivision (b)*

Section 300, subdivision (b)(1), authorizes dependency court jurisdiction if a child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness as a result of a parent's failure adequately to supervise or protect the child, or a parent's failure to provide regular care for the child due to, among other things, the parent's mental illness or substance abuse.  (§ 300, subd. (b)(1).)

"Exposure to domestic violence may serve as the basis of a jurisdictional finding under section 300, subdivision (b)."  (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.)  "The court need not wait until a child

11

is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) "'"[P]ast violent behavior in a relationship is 'the best predictor of future violence.'"'" (*In re R.C.*, *supra*, 210 Cal.App.4th at p. 942; see *In re A.F.* (2016) 3 Cal.App.5th 283, 289 ["Although there must be a present risk of harm to the minor, the juvenile court may consider past events to determine whether the child is presently in need of juvenile court protection"].) "'Facts supporting allegations that a child is one described by section 300 are cumulative.' [Citation.] Thus, the court 'must consider all the circumstances affecting the child, wherever they occur.' [Citation.]" (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.)

C. *Analysis*

Mother contends the court erred in exercising jurisdiction over the children because on the date of the jurisdiction hearing there was no current risk of harm. She argues that "the parents generally lived or maintained a peaceful relationship after August 2019, . . . and children were all happy with no risk at all of being physically harmed in parents' care." We disagree.

First, we remind Mother that we must view the evidence in the light most favorable to the Department. As such, contrary to her contention that the parents maintained a peaceful relationship after August 2019, the evidence indicates that after the August 2019 incident, Father violently assaulted Mother at least twice in October of 2019. During one incident, on October 6, 2019, Father grabbed Mother by the throat and slammed her against the wall, causing Mother to

scream for help. Witnesses intervened, told Father to stop, and called police. When police arrived, Mother had bruises from three days earlier; Mother reported to police she had sustained these injuries in her home during a domestic violence incident and the police reported that there was ongoing abuse. While Mother subsequently told DCFS that the attacker was an unknown purse snatcher, the evidence supports a contrary finding. (*In re Dakota H.*, *supra*, 132 Cal.App.4th at p. 228.)

The same principle applies to Mother's claim that there existed "no risk at all" to the children. Reports indicate that Chris had witnessed the August 2019 strangling incident, and that Father shoved Mother while she was holding Jacob. Indeed, when Mother applied for the restraining order, she stated that the children "have witnessed [Father's] abuse." As previously recognized, children can be "put in a position of physical danger from [spousal] violence" because, "for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot or leg." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194; see also *In re R.C.*, *supra*, 210 Cal.App.4th at p. 943 [affirming the juvenile court's assertion of jurisdiction, even though the child who witnessed a violent altercation "was not physically hurt"].)

Second, although Mother and Father had previously acknowledged, in August of 2019, that there had been multiple prior incidents of violence (and Mother acknowledged additional abuse in Oct. 2019), both parents subsequently minimized the seriousness of the domestic violence relationship and claimed that prior reports were

13

fabricated. A parent's denial and minimization are relevant factors in considering whether a parent is likely to modify his or her future behavior absent court supervision. (*In re A.F., supra,* 3 Cal.App.5th at p. 293 [so stating]; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].) Here, the juvenile court expressed concern over the fact that there had been multiple episodes of violence and observed that Mother had been in two previous relationships involving domestic violence and the issuance of restraining orders.

To the extent Mother points out Father moved out of the home once "the Department got involved," this does not undermine the court's finding. If anything, it is consistent with a pattern wherein Mother and Father modify their behavior while under active scrutiny, but revert to unhealthy patterns when left unsupervised.[8]

Finally, Mother argues the juvenile court here exercised jurisdiction solely because the parents violated a restraining order and argues that this was the business of the police department, not the juvenile court. She also argues that the termination of the restraining

---

[8]      *In re Daisy H.* (2011) 192 Cal.App.4th 713—a case holding that there was insufficient evidence of failure to protect—is of no help to Mother because it involved domestic violence that occurred seven years before the section 300 petition was filed, the children never witnessed domestic violence between the parents, the parents were separated, and there was no evidence of ongoing violence between them. (*Id.* at p. 717.) Conversely here, the incident was not a long-past occurrence, there was evidence the physical violence occurred in the children's presence, and the parents made it clear that they intended to continue their relationship.

14

order effectively "mooted out" the violations supporting jurisdiction. We disagree.

First, the juvenile court did not invoke jurisdiction solely because of the failure to comply with a restraining order, but because the circumstances surrounding that violation—and the ensuing investigation—revealed that: (1) Father had committed additional acts of violence against Mother after his arrest and issuance of the restraining order; (2) Mother and Father were now minimizing and/or outright denying the prior abuse; and (3) the boundaries that might otherwise prevent the risk of harm to the children (such as the restraining order) were no longer being maintained. The juvenile court was entitled to consider these cumulative facts and "'all the circumstances affecting the child, wherever they occur.'" (*In re T.V.*, *supra*, 217 Cal.App.4th at p. 133.) As to Mother's contention that the court's termination of the restraining order vitiated jurisdiction, the court agreed to terminate the order (based on a request by both parents) *after* it had made its findings and orders invoking jurisdiction. As such, the court lifted the restraining order to allow the parents to interact and reconcile their relationship but issued its jurisdictional findings and orders to monitor and protect the safety and welfare of the children. (Cf. *In re D.P.* (2020) 44 Cal.App.5th 1058, 1069 [because father had obtained restraining order barring contact between parents and barring Mother from family home, juvenile court could reasonably find that removal of child from Mother's custody was not necessary].)

Dependency jurisdiction is inherently fact driven and the evidence must be viewed in its totality. We conclude there was substantial

15

evidence to support the section 300, subdivision (b) jurisdictional finding. (See *In re R.C.*, *supra*, 210 Cal.App.4th at p. 944 [finding substantial evidence that the father's violence was ongoing in part because "[t]his case does not involve a single act which endangers a child" but instead "involves two separate acts of domestic violence," one of which occurred "in the presence of one of the children"].)[9]

## II. *The Dispositional Order is Supported by Substantial Evidence*

Mother and Father challenge the dispositional order, contending that the juvenile court erred in failing to consider, or impose, less restrictive alternatives and/or make adequate findings on these issues. As explained below, we discern no reversible error, and accordingly affirm.

### A. *Relevant Law and Standard of Review*

Section 361, subdivision (a)(1) provides that, when a minor is adjudged a dependent of the court, the court "may limit the control to be

---

[9] On appeal, Mother also argues that the court's jurisdictional finding violated her constitutional rights to freely associate with family members and to live as a family without governmental interference. We find no cognizable error.

First, Mother did not raise these constitutional claims before the juvenile court, and issues not so preserved are generally deemed forfeited on appeal. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293; see also *In re A.A.* (2012) 203 Cal.App.4th 597, 606 [even constitutional claims can be forfeited].) Second, Mother's constitutional claims are premised on her factual assertions that "there were no incidents since August 2019" "the family resolved the issues presented in August 2019" and the children were not at any risk of harm. As indicated above, the court concluded otherwise and substantial evidence supports the court's findings.

exercised over the dependent child by any parent [or] guardian." However, a child may not be removed from the physical custody of his or her parents unless there is "clear and convincing evidence" of one of the circumstances specifically enumerated in the statute. (§ 361, subd. (c).)

The statutory circumstance that the juvenile court found here to support removal from Father is that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's [or] guardian's . . . physical custody." (§ 361, subd. (c)(1).)

When reviewing a finding that the trial court found proven by clear and convincing evidence, the question on appeal is whether the record as a whole contains substantial evidence from which a reasonable factfinder could have found it highly probable that the evidence was true. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)

B. *Analysis*

1. *Father's Contentions*

Father contends that the juvenile court erred in ordering Jacob removed from his custody without considering the alternative of removing Father from the family home as a means to protect Jacob.

17

Father further argues that the court's failure to consider, and make specific findings on this alternative option, was prejudicial in light of the fact that Father had successfully remained apart from Mother pending the dispositional hearing.[10] As explained below, we discern no reversible error in the juvenile court's findings and orders.

In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court "must also consider whether there are any reasonable protective measures and services that can be implemented to prevent the child's removal from the parent's physical custody." (*In re D.B.* (2018) 26 Cal.App.5th 320, 332, citing § 361, subd. (c)(1).)

Subdivision (c)(1) specifically identifies two alternatives for the juvenile court to consider as "a reasonable means to protect the minor." One is "[t]he option of removing an offending parent [or] guardian . . . from the home." (§ 361, subd. (c)(1)(A).) The other is "[a]llowing a nonoffending parent [or] guardian . . . to retain physical custody as long as that parent [or] guardian . . . presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm." (§ 361, subd. (c)(1)(B).)

---

[10] In his reply brief, Father states that the "question before this Court is not whether the order removing Jacob from Father's custody is supported by the evidence" but whether "the juvenile court follow[ed] the statutory mandate [to] consider the alternatives to removal it is required to consider, . . . including whether ordering the offending parent out of the family home would protect the child from the risk of harm that parent presents?" Accordingly, we focus our analysis on this narrower aspect of the dispositional order and—to the extent relevant to any harmless error analysis—the evidence pertaining to that issue.

Under subdivision (e), the juvenile court must determine "whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home" and "shall state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).)

Applying this criteria, we find no actionable error.

First, the juvenile court expressly stated its reasons for removal, explaining it found "removal of Jacob from his father is necessary because of the domestic violence" and, to a lesser extent, because of its concerns over "the alleged alcohol abuse." The court further stated that the Department had "made reasonable efforts to prevent removal" and that there were services available to prevent detention of the children from Mother.

Second, as recognized by the court in *In re Michael S.* (2016) 3 Cal.App.5th 977 (*Michael S.*), section 361 "does not . . . preclude the possibility of ordering both removal of the parent from the home and removal of the child from the parent," because subdivision (c)(1)(A) "does not state that the option of removing a parent from the home will *necessarily* be sufficient to protect the child in all cases even if ordered." (*Id.* at p. 984.) The court in *Michael S.* further observed that certain circumstances, such as a history of shifting living arrangements and the expiration of a restraining order, might warrant such dual orders to ensure that the offending parent may not exert physical custody "at any location." (*Id.* at p. 985 & fn. 3.)

In arguing that the juvenile court in this instance committed prejudicial error, Father leans heavily on *In re D.P., supra,* 44

19

Cal.App.5th 1058 and *In re A.R.* (2015) 235 Cal.App.5th 1102 (*A.R.*).
However, neither case is factually apt.

In *In re D.P.*, the appellate court concluded the juvenile court erred by failing to state the facts supporting its decision to remove the child from Mother's custody. The court further concluded the error was prejudicial because at the time of the disposition hearing, Mother had moved out of the family home and "father had an active restraining order barring contact between the parents and requiring mother to stay away from the family home." (*D.P., supra,* 44 Cal.App.5th at p. 1069.) In light of the active restraining order, the appellate court concluded that it was reasonably probable that had the juvenile court stated the facts supporting its removal order, "it would have found D.P. was reasonably protected under the restraining order, and removing him from mother's physical custody was unnecessary to ensure his safe return home." (*Ibid.*)

Here, unlike in *D.P.*, the juvenile court *did* state its reasons for removal. To the extent the court did not expressly add why the option in subdivision (c)(1)(A) was inadequate to protect Jacob—and assuming such failure was error—any such error was harmless. There was no active restraining order in effect, and Father requested the court allow him to immediately move back into the family home at disposition. Moreover, the parents' history indicated that even after a violent assault resulting in Father's arrest, the parents had a tendency to revert to cohabitation absent court intervention and supervision. (Cf. *Michael S., supra,* 3 Cal.App.5th at p. 984 [recognizing that removal of

20

custody and removal of parent from family home may be warranted under such circumstances].)

Father's reliance on *A.R., supra*, 235 Cal.App.5th 1102, is similarly misplaced. *In A.R.*, both parents retained custody subject to the Department's supervision after disposition. (*Id.* at p. 1117.) Subsequently, the Department filed a section 388 petition seeking to modify the court's prior orders by asking that the child be removed from family maintenance with the Father, and provided with supervised visitation with Father. (*Ibid.*) The juvenile court granted the petition for modification and also issued an order removing the child from the father's custody. (*Id.* at p. 1112.) On appeal, the court reversed the removal order, finding insufficient evidence that the father's removal from the home was insufficient to protect the child. The court pointed out that, after the dispositional hearing, the father had moved out of the family home and the parents had themselves made custodial changes wherein the Mother had solely allowed supervised visits by the father. (*Id.* at p. 1118.) The court further noted that "[t]here was no evidence that father intended to move back into the home where A.R. resided with mother or that father was not abiding by mother's limits on his visitation." (*Id.* at p. 1118.)

Unlike in *A.R.*, Father here expressed his desire and intention to move back into the family home, while Mother evinced a tendency to minimize the seriousness of Father's conduct and a failure to maintain appropriate boundaries and limitations. Accordingly, there was ample evidence to support the juvenile court's removal order in this case, and

21

any failure to further explicate the reasons for the removal of Jacob from Father was harmless. (See *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218 [failure to make required findings under § 361, subd. (e), harmless if "'it is not reasonably probable such finding, if made, would have been in favor of continued parental custody'"].)

2. *Mother's Contentions*

Mother contends that the juvenile court erred in failing to proceed with informal supervision pursuant to section 360, subdivision (b), and by ordering her to complete "another set of the same case plan the parents just spent two years completing." We disagree.

First, at the dispositional hearing, Mother never requested the court proceed without ongoing court supervision pursuant to section 360, subdivision (b), nor otherwise challenged the DCFS's case plan. Instead, Mother's counsel stated that "[m]other submits to the recommendation." DCFS recommended against dismissing jurisdiction and allowing the parents to engage in voluntary services, and instead recommended the children remain in the home of Mother with orders that she participate in a domestic violence support group, parenting class, individual counseling to address domestic violence, and family preservation.[11] In expressly submitting to the "recommendation" of DCFS, Mother acquiesced in these recommended findings and orders. (*In re Richard K.* (1994) 25 Cal.App.4th 580, 589 ["[M]other's

---

[11] With regard to the support group for domestic violence, the court observed that its notes "indicate that [Mother] has already completed that."

22

'submitting on the recommendation' constituted acquiescence in or yielding to the social worker's recommended findings and orders"].)[12]

Even if we were to assume that Mother's challenges to the trial court's dispositional orders were not forfeited, we would not find error. The juvenile court has broad discretion when fashioning orders for the well-being of a child, and we will not reverse such orders absent a clear abuse of discretion. (*In re N.M.*, *supra,* 197 Cal.App.4th at p. 171; § 362, subd. (a) [the court "may make *any and all reasonable orders* for the care, supervision, custody, conduct, maintenance, and support of the child"], italics added.) Mother's domestic violence provider noted Mother's progress was "okay" and "fair but could be better," while both parents minimized and denied well-documented violence that occurred in the presence of the children and discontinued services until DCFS and the juvenile court intervened. There was no abuse of discretion. (*In re N.M.*, *supra*, 197 Cal.App.4th at p. 171; § 362, subd. (a).)

---

[12] In *In re Richard K.*, the court concluded the parent's submission on the child service agency's report and recommendation without any evidence or argument forfeited the claim on appeal that the disposition order adopting that recommendation was not supported. (*In re Richard K.*, *supra*, 25 Cal.App.4th at p. 589.)

In her reply brief, Mother does not respond to the Department's assertion of forfeiture, and citation to *Richard K.*, with regard to her dispositional arguments. Instead, she simply states that any challenges to the court's *jurisdictional* findings are preserved and that the errors resulting from these findings effectively "voided" the court's power to subsequently issue any dispositional orders. In light of our failure to find any actionable errors in the court's jurisdictional orders, we must also reject this bootstrapped contention.

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY, J.

24